RECEIVED
SDNY PRO SE OFFICE
2026 JUN 26 PM 4: 03

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS B. DELOACH,                              Case No.: 1:25-cv-04348-JPO-RFT
**Plaintiff,**

v.

TRANS UNION LLC, et al.,
**Defendants.**

### Plaintiff's Memorandum in Opposition to Defendant's Motion for Sanctions and Cross-Motion for Sanctions

Plaintiff, Thomas B. DeLoach, pro se, respectfully submits this Memorandum in Opposition to Defendant TransUnion's Motion for Sanctions and cross-moves for sanctions against Defendant for providing false information to this Court and for the spoliation of critical evidence. The Defendant's strategy has been to change the record and then deny events occurred.

### I. Denial of Factual Allegations and Refutation of "Lack of Evidence"

### 1. Denial of Receipt of Investigation Results:

Defendant asserts it sent Plaintiff investigation results; this is unilaterally false. Plaintiff never received such results. Instead, Plaintiff observed the account's removal and subsequent reinsertion through daily personal monitoring of Plaintiff's credit report. Defendant's reliance on internal logs while failing to prove actual delivery to Plaintiff highlights a lack of candor regarding its reinvestigation process.

### 2. The "Wipe and Sanction" Strategy (Spoliation of Evidence):

Defendant argues that this issue should be resolved now based on a "lack of evidence." Plaintiff refutes this as a bad-faith attempt to exploit Defendant's own destruction or suppression of data. Defendant cannot "wipe" information from Plaintiff's file and then move for sanctions because Plaintiff cannot "produce" the very data Defendant possesses and controls.
 Case Law: Under the doctrine of Spoliation of Evidence, a court may impose sanctions—including an adverse inference—against a party that fails to preserve or destroys evidence essential to the case. See Zubulake v. UBS Warburg LLC (S.D.N.Y. 2003). Defendant's "clean" records are the result of its own internal "wiping" of the reinsertion events, a tactic used to mislead the court.

### 3. Plaintiff Did Not Proceed Frivolously:

Defendant's claim that Plaintiff knowingly proceeded with a "frivolous" case after receiving disclosures is false. Plaintiff personally observed the tradeline's re-reporting and immediately submitted a second dispute. A consumer's firsthand observation and subsequent dispute are the exact opposite of frivolous behavior; they are the actions of a consumer seeking to correct a verified inaccuracy.

### II. Refutation of Defendant's Discovery Assertions

### 4. Misleading Use of "Negative Evidence":

Defendant points to the absence of a "hard inquiry" from Amity One as proof that no credit report was pulled. This is a material misrepresentation. It is common industry practice for lenders to utilize "soft pulls" or third-party vendors which do not always appear as "hard inquiries" on a consumer disclosure. Defendant is using a technicality to mask the actual financial harm caused to Plaintiff.

**5. Failure to Disclose in Discovery:**
Defendant alleges Plaintiff had ample time to produce evidence. However, Plaintiff cannot produce evidence that Defendant has sole ownership and possession of. This information—specifically the metadata and real-time logs of the reinsertion—should have been truthfully disclosed in Defendant's interrogatories and requests for admissions. Defendant's failure to do so, followed by a motion for sanctions, is an egregious abuse of the discovery process.

**III. Argument for Cross-Motion for Sanctions**

**6. Fraud on the Court and False Reporting:**
Defendant is providing false information to this Court by claiming the NRA account was "never re-reported." Plaintiff's 150-point score drop, occurring while Plaintiff had no other derogatory reporting, is objective evidence that a major collection item was reinserted.
 Case Law: False reporting and misleading the court are inherently sanctionable. See Chambers v. NASCO, Inc. (1991), which affirms the court's "inherent power" to sanction parties who act in bad faith or commit fraud upon the court.
 FCRA Standard: Reporting a 2017 debt as a 2024 collection (re-aging) is a willful violation of 15 U.S.C. § 1681e(b). Defendant's insistence that this violation "never happened" despite Plaintiff's evidence is an attempt to mislead the judicial process.

**Conclusion**

Plaintiff's claims are rooted in a documented sequence of reinsertion and re-aging. Defendant's Motion for Sanctions is an attempt to use its control over the data to silence a pro se litigant. Plaintiff respectfully requests the Court deny Defendant's motion and grant Plaintiff's Cross-Motion for Sanctions for Defendant's lack of candor and spoliation of evidence.

**Refutation of Defendant's Factual and Legal Assertions**

**1. Response to Allegation of Frivolous Complaint:**
Plaintiff denies that the Complaint is frivolous or devoid of evidentiary support. Defendant's assertion is based on a selective and misleading reading of the record. Plaintiff's factual contentions—specifically the illegal reinsertion of a previously deleted tradeline—are supported by a sworn affidavit and contemporaneous credit score data. These claims are warranted by existing law under 15 U.S.C. § 1681i(a)(5)(B) (the "Reinsertion Rule") and 15 U.S.C. § 1681e(b) (requirement for maximum possible accuracy). Far from being aware of any "frivolous nature" of the Complaint, Plaintiff is aware of a documented statutory violation that Defendant has systematically ignored.

**2. Response to Allegation Regarding "Reasonable Inquiry":**
Plaintiff denies that a "reasonable inquiry" would have revealed the Complaint to be frivolous. To the contrary, a reasonable inquiry into the facts of this case reveals that Defendant reinserted a

seven-year-old debt (2017) and falsely reported it as a new collection opened in December 2024. A reasonable inquiry into the law reveals that the FCRA explicitly prohibits the reinsertion of disputed information without a certification of accuracy and a mandatory five-day notice to the consumer—neither of which Defendant provided. Plaintiff's inquiry confirmed that Defendant's actions caused the collapse of a loan in progress, establishing a clear and actionable legal claim for actual damages.

**3. Response to Allegation Regarding Deletion and Merit:**
Plaintiff denies that the "sole account at issue was deleted... commensurate with the FCRA" in a manner that renders this case meritless. While Defendant did initially delete the account, Defendant omits the material fact that it reinserted the exact same account two to three days later. This reinsertion, coupled with the "re-aging" of the debt to 2024, constitutes a distinct and willful violation of the FCRA. By focusing solely on the initial deletion and ignoring the subsequent reinsertion, Defendant is presenting a "half-truth" to the Court. The merit of Plaintiff's claim lies in the illegal re-entry of the data and the resulting 150-point score drop, which Defendant has failed to address or rectify.

**4. Response to Allegation of "Reasonable Procedures":**
Defendant's claim that it followed "reasonable procedures" at all times is factually incorrect and belied by the record. Under 15 U.S.C. § 1681e(b), a credit reporting agency must follow reasonable procedures to assure maximum possible accuracy. Defendant failed this standard when it reinserted a seven-year-old debt (2017) and reported it as a new collection from January 2025. Reporting an aged debt as a "new" collection is a classic case of re-aging, which serves as prima facie evidence that Defendant's procedures were not reasonable and were, in fact, designed to artificially deflate Plaintiff's creditworthiness.

**5. Response to Allegation of "Reasonable Reinvestigation":**
Defendant's assertion that it conducted a "reasonable reinvestigation each time it was required to" is a material misrepresentation. After Plaintiff notified Defendant that the tradeline had been illegally reinserted, Defendant refused to investigate the new violation, instead labeling the dispute "frivolous." A reinvestigation that results in the immediate reinsertion of the same disputed error—without the mandatory notice required by 15 U.S.C. § 1681i(a)(5)(B)—is by definition not "reasonable."

**6. Response to Allegation Regarding Furnisher Duties:**
Defendant's attempt to shift liability to the "credit furnisher" is a misstatement of the law. While furnishers do have duties under the FCRA, Defendant's liability is independent. The FCRA imposes a non-delegable duty on consumer reporting agencies to investigate disputes and maintain accurate files. Defendant cannot use the furnisher as a shield when Defendant itself failed to provide the mandatory 5-day notice of reinsertion, an obligation that falls solely on the credit bureau (TransUnion) under the statute.

**7. Response to Allegation Regarding "Substantial Factor":**
Defendant's claim that the Account was not a "substantial factor" in Plaintiff's damages is contradicted by objective data. Plaintiff has provided evidence of an instantaneous 150-point credit score drop specifically timed to the reinsertion of the inaccurate tradeline. In the credit industry, a 150-point drop is a catastrophic event that fundamentally alters a consumer's risk

profile. Given that Plaintiff had no other negative reporting, this account was not just a "substantial factor," but the exclusive factor in Plaintiff's credit damages.

**8. Response to Allegation Regarding Damages and Causation:**
Plaintiff denies that damages are "not causally related" to Defendant's violations. Defendant's illegal reinsertion of the trade line caused a blocked loan closing, which constitutes Actual Damages (financial loss). Furthermore, the stress of having a "clean" credit file suddenly decimated by a re-aged 2017 debt while in the middle of a major financial transaction has caused significant emotional distress. These damages are the direct and proximate result of Defendant's willful refusal to follow reinsertion and reinvestigation protocols.

**9. Response to Allegation Regarding Willfulness:**
Plaintiff denies that there is "no evidence" of willfulness. Willful non-compliance under 15 U.S.C. § 1681n includes actions taken in "reckless disregard" of the law. Defendant's decision to label a documented illegal reinsertion as "frivolous" to avoid its statutory duty to investigate is the very definition of a willful violation. Furthermore, the re-aging of a 2017 debt to 2024 is a deliberate act that demonstrates a reckless indifference to the requirement for maximum possible accuracy.

**10. Response to Allegation Regarding Demand for Dismissal:**
Plaintiff admits that Defendant demanded a dismissal on April 7, 2026, and that Plaintiff refused. Plaintiff's refusal was predicated on the fact that Defendant's demand was based on a false narrative that omitted the illegal reinsertion. Plaintiff cannot be sanctioned for refusing to dismiss a meritorious claim that Defendant is attempting to suppress through material omissions and bad-faith litigation tactics.

## II. Statement of Facts

**1. Original Dispute and Deletion:** On or about December 2024, Plaintiff submitted a dispute to Defendant TransUnion regarding an inaccurate trade line on Plaintiff's credit file. This account was originally opened in October 2017. In response, Defendant notified Plaintiff that the account was deleted in compliance with the FCRA.

**2. Illegal Reinsertion:** Within approximately two to three days of the initial deletion, Defendant reinserted the same trade line into Plaintiff's credit file. Defendant failed to provide Plaintiff with the mandatory five-day notice of reinsertion as required by 15 U.S.C. § 1681i(a)(5)(B).

**3. Material Misreporting (Re-aging):** Upon reinsertion, the trade line was reported with false and inaccurate dates. Specifically, Defendant reported the 2017 account as having been opened in December 2024 and entering collection in January 2025.

**4. Immediate Financial Harm:** Contemporaneous with this reinsertion, Plaintiff's credit score suffered an instantaneous and catastrophic drop of 150 points. At the time of this drop, Plaintiff had no other negative reporting or changes to Plaintiff's credit profile that could account for such a loss.

**5. Actual Damages:** This reinsertion and subsequent score drop occurred while Plaintiff was in the process of closing a loan. Defendant's refusal to remove the inaccurately reported, reinserted trade line directly caused the loan to be blocked from closing, resulting in concrete financial harm to Plaintiff.

**6. Defendant's Material Omission:** In the pending Motion for Sanctions, Defendant asserts that Plaintiff's claims are "void of evidentiary support." However, Defendant's motion relies entirely on the initial deletion while deliberately omitting the fact of the subsequent reinsertion and the resulting 150-point score drop.

**7. Evidence Preservation:** Plaintiff further asserts that Defendant has "wiped" or otherwise failed to maintain the internal records of this reinsertion. Plaintiff has provided a sworn affidavit based on personal knowledge and observation of the credit file changes to satisfy Plaintiff's evidentiary burden.

**8. Good Faith Basis:** Plaintiff's complaint is rooted in a well-documented sequence of events: a deletion, an illegal reinsertion without notice, and the re-aging of a seven-year-old debt. These actions constitute a willful violation of the FCRA, providing Plaintiff with a robust legal and factual basis for this action.

### III. Legal Standard: The High Bar for "Frivolous" Sanctions

Under Federal Rule of Civil Procedure 11, for Defendant to prevail on a Motion for Sanctions, it must prove that Plaintiff's claim has no plausible legal basis and no evidentiary support. A claim is only "frivolous" if it is based on an indisputably meritless legal theory or clearly baseless factual claims, or if it is filed in bad faith to harass the opposing party. Plaintiff's Complaint meets neither of these criteria:

**1. Plaintiff's Affidavit as Competent Evidence:** In federal court, a sworn affidavit is considered "competent evidence." Plaintiff has submitted a sworn affidavit describing the reinsertion of the NRA account and the resulting 150-point score drop. Because Plaintiff's claims are rooted in personal observation and documented financial harm, the Complaint is not "void of evidentiary support."

**2. The "Vicious Cycle" Argument:** Plaintiff's claims are warranted by 15 U.S.C. § 1681i(a)(5) (B) (the "Reinsertion Rule"). Even if Defendant claims a lack of "internal documentation" in its own curated records, the law specifically protects consumers from the reinsertion of disputed data without notice. Plaintiff's pursuit of a remedy for this statutory violation is a legitimate legal endeavor, not a "baseless" or "meritless" theory.

**3. Lack of Bad Faith:** Plaintiff brought this claim to seek a legitimate legal remedy for a blocked loan closing caused by Defendant's non-compliance. There is no evidence—and Defendant has provided none—that Plaintiff filed this action to harass or embarrass the Defendant.

### IV. Argument

### I. Defendant's Motion for Sanctions is Built Upon a Material Misrepresentation by Omission.

Defendant TransUnion's Motion for Sanctions is predicated on the demonstrably false premise that Plaintiff's claims are "void of evidentiary support." This assertion is only possible because Defendant has intentionally omitted the central factual basis of Plaintiff's lawsuit: the illegal reinsertion of the disputed trade line. Under Federal Rule of Civil Procedure 11(b)(3), an attorney or party certifying a motion to the Court warrants that the factual contentions have evidentiary support. By presenting a narrative that concludes with the "deletion" of the account,

while suppressing the evidence of its immediate reinsertion and the subsequent 150-point credit score collapse, Defendant has failed its duty of candor to this Court.

## II. Defendant's Omission Constitutes a Fraud on the Court.

A "fraud on the court" occurs when a party's misconduct is so egregious that it "permeates the entire proceedings" and undermines the integrity of the judicial process. Defendant is currently utilizing the court's sanctioning power as a weapon to silence a Pro Se litigant by making material misrepresentations of fact by omission.

Defendant's motion represents to this Court that Defendant "complied with the FCRA" by deleting the account.

This is a half-truth that functions as a whole lie; Defendant omits that it violated 15 U.S.C. § 1681i(a)(5)(B) just days later by reinserting the same data without the mandatory five-day notice.

Defendant further omits the "re-aging" of the debt—reporting a 2017 account as a 2024 opening —which is a distinct and willful violation of the requirement for "maximum possible accuracy".

To ask this Court to punish Plaintiff for "frivolity" while Defendant is actively concealing its own statutory violations is an abuse of process. Sanctions are intended to deter "reckless filings," not to provide a "safe harbor" for defendants who suppress evidence of their own liability.

Sanctions are intended to deter 'reckless filings,' not to provide a 'safe harbor' for defendants who suppress evidence of their own liability. By moving for sanctions based on a narrative that ends at the initial deletion—while omitting the subsequent illegal reinsertion—Defendant is attempting to use Rule 11 as a tactical weapon to distract from its own failure to comply with 15 U.S.C. § 1681i(a)(5)(B). Such a use of the Rule is contrary to its intended purpose and should be rejected by this Court.

## III. Plaintiff's Claims are Warranted by Existing Law and Objective Evidence.

Plaintiff's claims are not "frivolous" as defined by the FCRA or Rule 11. A claim is only frivolous if it lacks any "plausible legal basis".

**1. Legal Basis:** Plaintiff's action is squarely warranted by 15 U.S.C. § 1681i (reinsertion procedures) and 15 U.S.C. § 1681n (willful non-compliance).

**2. Evidentiary Support:** Plaintiff has provided objective evidence in the form of a contemporaneous credit score showing a 150-point drop directly linked to Defendant's actions. Plaintiff has also provided a sworn affidavit, which constitutes competent evidence that must be weighed by a trier of fact, not dismissed via a sanctions motion.

## IV. Defendant's Persistent Mischaracterization of the Pleadings.

Further evidence of Defendant's lack of candor is found in its repeated insistence that "no reinsertion was alleged" in the initial Complaint. Plaintiff has already addressed this specific misstatement by highlighting for Defendant the exact paragraph in the Complaint—\[Insert Paragraph Number, e.g., Paragraph 12]—where Plaintiff explicitly alleged that Defendant reinserted the trade line two to three days after its initial removal.

Despite being directly corrected and shown the specific allegation in the record, Defendant has persisted in a strategy of omission rather than addressing the actual merits of the case. This refusal to litigate based on the actual pleadings proves that Defendant's Motion for Sanctions is

not brought to correct a "frivolous" filing, but rather to harass a Pro Se litigant and avoid the legal consequences of its non-compliance with 15 U.S.C. § 1681i(a)(5)(B).

**V. Plaintiff's Cross-Motion for Sanctions Against Defendant TransUnion.**
Plaintiff moves this Court to sanction Defendant under its Inherent Power and Rule 11 for providing false and misleading information.

**1. Material Misrepresentation:** Defendant asserts the NRA account was "never re-reported." Plaintiff asserts the NRA account was re-reported and caused an instantaneous 150 point drop in Plaintiff's credit score. The fact that Defendant asserts this did not occur, the record no longer reflects these facts, and the fact that the Defendant did not disclose during discovery after being ordered to negotiate by the court in good faith should be of importance to this court.

**2. Spoliation of Evidence:** If Defendant's internal "consumer relations documents" do not show the reinsertion, it is because Defendant has failed to preserve the metadata or "system logs" that track real-time changes to a consumer's file. To "wipe" a consumer's history and then claim the history never existed is a fraud upon the Court.

**3. Bad Faith:** Defendant's motion is not a search for truth but an attempt to use its superior resources to bully a Pro Se litigant into dismissing a meritorious claim.

**VII. The Mathematical Insufficiency of Defendant's "Negative Evidence" Defense**
Defendant's reliance on three consumer disclosures from January and February 2025 as "proof" that the NRA account was never re-reported is mathematically and logically flawed. This defense constitutes a "gap-filling" fallacy that deliberately ignores the specific window of time in which the violation occurred and persisted.

**1. The Critical Window Omission:** Plaintiff alleges the reinsertion occurred approximately two to three days after the initial December 23, 2024, deletion. Furthermore, Plaintiff personally observed the NRA trade line on Plaintiff's TransUnion credit report through at least January 30, 2025. Defendant's produced disclosures are merely snapshots in time; the fact that the account may have been absent on three specific dates does not disprove its presence during the weeks it was observed by Plaintiff and caused the 150-point score collapse.

**2. Instantaneous Score Decline and Nexus of Harm:** The credit score decline was instantaneous. Within 24 hours of the tradeline being reinserted as a "new" account in collection, Plaintiff's credit score plummeted 150 points. This catastrophic drop occurred at the precise moment Plaintiff was working to satisfy the requirements of a potential creditor, Amity One, who required the debt to be resolved prior to closing the loan. Instead of the dispute process facilitating the loan's closure, Defendant's illegal reinsertion made the loan an impossibility.

**3. Transitory Reinsertion and Real-Time Observation:** Defendant's database is dynamic, not static. It is entirely possible—and consistent with Plaintiff's real-time observations—for an account to be reinserted, cause an immediate score decimation that blocks a loan, and then be suppressed or "wiped" prior to the generation of a specific disclosure. Defendant's produced documents are not a continuous record; they are curated instances that fail to reflect the daily reality of Plaintiff's credit file between December 2024 and late January 2025.

**4. Failure of "Negative Evidence":** In federal litigation, the absence of a record (negative evidence) is only persuasive if the party can prove that a record would have been made if the event occurred. Here, Defendant has failed to produce the real-time system metadata or "event

logs" that would track daily changes to a consumer's file. Consequently, Defendant's "three disclosures" are a curated subset of data that deliberately ignores the timeframe of the violation —a timeframe during which Plaintiff personally verified the account's presence.

**5. Proof by Score Correlation:** A credit score does not drop 150 points without a major derogatory event. Since Plaintiff had no other negative reporting during this period, the score drop itself serves as mathematical proof that a derogatory item was present. To claim the account was never reinserted is to claim that a catastrophic score drop occurred without a cause, a proposition that is both logically and mathematically impossible.

## V. Conclusion

Plaintiff is a Pro Se litigant entitled to have Plaintiff's "well-pleaded facts" heard. Defendant's attempt to frame a legitimate factual dispute as "frivolous" by omitting key events is an act of bad faith. Plaintiff respectfully requests that this Court deny Defendant's Motion for Sanctions and, instead, exercise its inherent authority to sanction Defendant for its lack of candor and its attempts to mislead this Court.

### Relief Sought

**Plaintiff respectfully requests that the Court:**

1. Deny Defendant's Motion for Sanctions in its entirety;
2. Grant Plaintiff's Cross-Motion for Sanctions;
3. Strike Defendant's Affirmative Defenses regarding "Reasonable Procedures"; and
4. Award Plaintiff any further relief the Court deems just and proper.

I, Thomas B. DeLoach, Plaintiff Pro Se, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements and representations are true and correct to the best of my knowledge, information, and belief.

I understand that this declaration is submitted to the Court and that any knowingly false statements may subject me to penalties for perjury under applicable federal law.

Dated: June 15, 2026
Respectfully submitted,

/s/ Thomas B. DeLoach

Thomas B. DeLoach
Plaintiff Pro Se
806 Wilson Ave
Valdosta, GA 31602
(310) 962-3207
tbd235@gmail.com

## CERTIFICATE OF SERVICE

I certify that on June 15, 2026, a true and correct copy of the foregoing document was served on counsel of record identified below via email.

Camille Renee Nicodemus
**Quilling Selander Lownds Winslett Moser**
1033 N Meridian St., Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600
Facsimile: 317-899-9348
Email: cnicodemus@qslwm.com

Joshua Allen Stiers
**Trans Union, LLC**
555 W Adams St
Chicago, IL 60661
Telephone: 765-401-4230
Email: joshua.stiers@transunion.com
*Counsel for TransUnion, LLC*

Cindy Debra Salvo
**The Salvo Law Firm, P.C.**
185 Fairfield Avenue, Suite 3c/3d
West Caldwell, NJ 07006
Telephone: 973-226-2220
Email: csalvo@salvolawfirm.com
*Counsel for National Recovery Agency, Inc.*

Carlos H Salguero, Jr
chsalguero@venable.com,
carlossalguerojr@gmail.com,
nylitigationdocketing@gmail.com
        &
Allison M Cunneen
amcunneen@venable.com,
nylitigationdocketing@venable.com
151 West 42nd Street
New York, NY 10036
Phone: 212.307.5500
Fax: 212.307.5598

/s/ Thomas B. DeLoach
Thomas B. DeLoach, Pro Se

Heather Huggins Sharp
**Seyfarth Shaw LLP**
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
Telephone: 404-881-5477
Facsimile: 404-892-7056
Email: hsharp@seyfarth.com
*Counsel for Equifax Information
Services, LLC*

Exhibit 1

**Exhibit:** An example of the blockage Plaintiff has not once but over and over and over has had to contend with accessing information that should be available. In this case technicality is the problem but that does not explain the pattern of delete record, withhold information, block access to information, and then deny events occurred.



Case 1:25-cv-04348-JPO-RFT    Document 141    Filed 06/26/26    Page 11 of 21

*Exhibit 2*

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

< All complaints (.)

# 250203-18514782

**CLOSED**

## ✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 2/2/2025 | Credit reporting or other personal consumer reports | Incorrect information on your report |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or

- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or

- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

https://portal.consumerfinance.gov/consumer/s/complaint-detail#500eq00000MwFV8AAN

2/3/25, 12:55 AM
Page 1 of 5

I paid on debt until my business went under, the reporting agencies state I never paid on the loan. Debt was opened in 2017 or 2018, when debt reappeared recently it was reported opened July 2024 and going into collection August. I then reported it to credit bureaus and they. Everyone including credit agencies knows it's impossible for a loan that isn't over 30 days old to go into collection. Every one knowing this can't be true, the fact that this took place in tangent with every part of my life coming under attack including loosing everything I owned after a burglary and insurance deny claim, and lastly all of the credit bureaus refuse to remove debt from my credit report until the utilization on my cards was too much to access the funds lenders were standing by to process and that I desperately need is why I believe this to be an intentional attack. The original loan was for $6K, the credit bureaus has over $9K. That's 4 major discrepancies, date loan opened, amount of initial loan, amount paid, and when loan went into collection, not to mention other important facts NY changed law from 6 to 3 years, I was under the understanding California litigation resolved this debt, and I'm almost certain this debt is past it's 7 yr statutory reporting date. In addition, the credit bureaus charged me for twice, this original loan was already on my credit report, it's called Net Credit for around $6K. They charged me twice for the same debt, report as if happened today, at the time when I most need access to funds in my life, dropping my credit score more than 150 points overnight. As hard as I worked to recover and make things right, all the sacrifices. When I recovered financially, I called everyone one of my lenders, they didn't call me, I called all of them and made arrangements and paid everyone of them back. I did the right thing with every creditor that I knew of. Why am I being punished. Transunion say they removed and my credit is back up to 659, no where near the 718 it was but improvement from the just over mid 500s it dropped to but a lender as recent as early last week said my Transunion score on their side was still 585. Equifax still refuses to removed despite online and certified mail request. Their response to certified mail was that they needed more information to verify my account, yet mailed their return letter to the address confirming my account. Experian did not remove from my credit report until I my card limits reached levels where lender could no longer service loan. Once I recovered, I began communicating with lender to resume payments, which I did, then the loan, along with other high interest loans was involved in a huge litigation the state of California brought

against the lenders. I received paperwork about litigation and payments were paused and I never heard back from the lender. Then this happened. The financial devastation this has caused is beyond words. This is an unwarranted unprecedented attack purposefully blocking my access to funds. Even before this I really feel like there really needs to be a serious third party investigation into the credit reporting agencies. It just doesn't make sense how they assess scores. Before this I rarely carried a balance on my cards, I always paid my debts early and occasionally on time, I was never late on anything, and I paid of an almost $30K car loan in just 3 and a half years. How is it my credit score was still barely over 700? I know since then I applied for a bunch of credit and that hurts for like two years but what about before. Something is off. The credit bureaus actions prevented me from accessing two loans, one for $20K and one for $18K. I will get through this financial hard time and I will be holding all the credit bureaus accountable. Each will pay punitive damages commensurate to their actions against me. The credit bureaus reporting has real life major impact on the lives of people. I had to pay off and sale my previous vehicle. I loved my Mercedes, that car still drove and looked as brand new as the day it came off the assembly line. Perfect, fun car to drive, with all the features, style, and comfort but I had to sale it because it costs over $1,400 to insure the vehicle in NY and the insurance companies said it was because of my credit score. I work extremely hard to improve my score only to have them take all my gains away from me overnight for a debt they know, it was already on my credit report, they know the debt is false, yet without provocation they take all my gains from me and block me from accessing the funds I need. I've attached one of the statements showing the impacts this attack has had on my financial wellbeing. All the statements state the same, not the too many inquiries excuse one of credit bureaus tried to deflect blame on.

**ATTACHMENTS**

IMG_1390.jpeg (3.3 MB)

IMG_1391.jpeg (1.9 MB)

View full complaint ⊕

 Closed

**STATUS**

The complaint was closed on 2/2/2025

The CFPB will not be taking additional action on your complaint. This complaint is now closed.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

 An official website of the United States Government

 Gmail    Exhibit 3    Tom DeLoach <tbd2351980@gmail.com>

## Your Application is Being Processed

**Net Credit** <mail@e.netcredit.com>    Fri, Oct 6, 2017 at 9:45 PM
Reply-To: Net Credit <Reply@e.netcredit.com>
To: <tbd2351980@gmail.com>



Dear Thomas,
Account #: 12431960

Thank you for choosing NetCredit. Your signed loan agreement with NetCredit has been received and your application has been forwarded to our Loan Processing Team for review.

We will contact you shortly by phone or email to let you know if you're approved or if we need additional information to process your loan application.

If you have any questions or concerns, our Customer Support Team is available Monday - Friday, 8am - 8pm CT and Saturday - Sunday, 9am - 5:30pm CT at (877) 392-2014.

You can also sign in to view your account details online at any time.

Sincerely,

**The NetCredit Customer Support Team**
Phone: (877) 392-2014
Email: support@netcredit.com
Fax: (855) 878-1068
www.netcredit.com

To ensure delivery of important updates from NetCredit please take a moment to add support@netcredit.com to your email address book.

We want to hear your feedback! Please take a moment to tell us how we're doing on our Trustpilot review page or by sending an email to feedback@netcredit.com.

Exhibit 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Thomas B. DeLoach,

**Plaintiff,**

-v-

TransUnion, LLC; Equifax Information
Services, LLC; Experian Information
Solutions, Inc.; National Recovery Agency, Inc.,

**Defendants.**

**Case No.:** 1:25-cv-04348-JPO-RFT

**Defendant:** TransUnion, LLC

### DECLARATION OF THOMAS B. DELOACH

I, Thomas B. DeLoach, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**1. PERSONAL KNOWLEDGE**

1. I am the Plaintiff in the above-captioned matter and submit this declaration based upon my personal knowledge.

**2. BACKGROUND AND CREDIT PROFILE**

2. Prior to the events described herein, I maintained a strong and stable credit profile, with all accounts current, low to average utilization, and no adverse reporting.
3. At the time relevant to this matter, there were no other negative trade lines, increased inquiries, or material changes to my credit profile that would explain a substantial decline in my credit score.

**3. APPEARANCE AND DISPUTE OF NRA TRADE LINE**

4. In or around December 2024, I was advised by a potential creditor that a trade line associated with National Recovery Agency, Inc. ("NRA") appeared on my credit reports.
5. Then with assistance from creditor I formally disputed this trade line with the credit reporting agencies, including Defendant.
6. On or about December 23, 2024, I submitted a dispute regarding this trade line.

**4. REMOVAL AND REINSERTION OF TRADE LINE**

7. After submitting my dispute, I observed that the NRA trade line was removed from my credit report.
8. However, within approximately three (3) days, I personally observed that the same NRA trade line reappeared (was re-reported) on my credit report.
9. This observation was made through my regular credit monitoring, which I accessed frequently during this period.
10. The rapid reappearance of the trade line occurred without any meaningful explanation or notification to me.

**5. CFPB COMPLAINT**

11. Following the denial of a loan that according to potential creditor would have otherwise close, I filed a complaint with the Consumer Financial Protection Bureau (CFPB) regarding the inaccurate reporting.
12. This complaint was submitted shortly afterwards when the issue was not resolved.

## 6. CREDIT MONITORING AND TIMELINE

13. During this time, after the potential creditor alerted me of the outlier as creditor described the NRA trade line, I was actively monitoring my credit reports through each consumer credit reporting bureau's website including Defendant's TransUnion.

14. My monitoring included reviewing updates to my credit file and score on a frequent and ongoing basis.

15. Through this monitoring, I directly observed:
    - The presence of the NRA trade line
    - Its removal following my dispute
    - Its reappearance within approximately three days

## 7. CREDIT SCORE IMPACT

16. Immediately following the events described above, I experienced a significant decline in my credit score, approximately 150 points instantaneously.

17. This decline occurred:
    - Without any other new accounts besides the NRA trade line.
    - Without increased credit utilization
    - Without additional inquiries
    - Without any other adverse reporting

18. Based on my personal knowledge and review of my credit activity, the only variable change during this period was the handling of the NRA trade line.

## 8. LACK OF NOTICE AND INFORMATION

19. I did not receive any notice from Defendant regarding:
    - Reinsertion of the trade line
    - Certification of accuracy
    - Results of any reinvestigation explaining the reappearance

20. I have not been provided documentation explaining:
    - Why the trade line reappeared
    - What procedures were followed
    - Whether the furnisher verified the information

## 9. RESULTING HARM

21. The events described caused measurable harm, including:
    - The forfeiture of an otherwise approved line of credit
    - A missed business opportunity
    - Having to withdraw from masters program at University of Texas Austin
    - First ever late rent payment leading to subsequent eviction
    - A substantial decline in my credit score
    - Impairment of my creditworthiness
    - Financial and reputational impact

22. This harm was direct, measurable, and occurred immediately following Defendant's actions.

## 10. PURPOSE OF DECLARATION

23. I submit this declaration in support of my opposition to Defendant's Motion for Sanctions and in support of my Motion to Compel.
24. The facts stated herein are true to the best of my knowledge and reflect my direct observations and experience.

**DECLARATION STATEMENT**

I declare under penalty of perjury that the foregoing is true and correct.

**Dated:** April 8, 2026

Thomas B. DeLoach
Plaintiff Pro Se
806 Wilson Ave
Valdosta, GA 31602
(310) 962-3207

## CERTIFICATE OF SERVICE

I certify that on April 8, 2026, a true and correct copy of the foregoing document was served on counsel of record identified below via email.

Cindy Debra Salvo
**The Salvo Law Firm, P.C.**
185 Fairfield Avenue, Suite 3c/3d
West Caldwell, NJ 07006
Telephone: 973-226-2220
Email: csalvo@salvolawfirm.com
*Counsel for National Recovery Agency, Inc.*

Camille Renee Nicodemus
**Quilling Selander Lownds Winslett Moser**
1033 N Meridian St., Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600
Facsimile: 317-899-9348
Email: cnicodemus@qslwm.com

Brenna McGill
**Troutman Pepper Locke LLP**
875 Third Avenue
New York, New York 10022
Telephone: 213.928.9852
Brenna.McGill@troutman.com
*Counsel for Experian Information Solutions, Inc.*

Heather Huggins Sharp
**Seyfarth Shaw LLP**
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
Telephone: 404-881-5477
Facsimile: 404-892-7056
Email: hsharp@seyfarth.com
*Counsel for Equifax Information Services, LLC*

Joshua Allen Stiers
**Trans Union, LLC**
555 W Adams St
Chicago, IL 60661
Telephone: 765-401-4230
Email: joshua.stiers@transunion.com
*Counsel for TransUnion, LLC*

/s/ Thomas B. DeLoach
Thomas B. DeLoach, Pro Se

US POSTAGE

ZIP 31601
02 7H
0006032977

FIRST-CLASS

USM4P
SDNY

Thomas B. DeLoach
806 Wilson Ave
Valdosta, Ga. 31602

ProSe Intake Unit
United States District Court
Southern District Of New York
500 Pearl Street  Rm 200
New York, NY 1007